UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**J&J SPORTS PRODUCTIONS, INC.,**

    **Plaintiff,**

-vs-                 Case No. 6:09-cv-391-Orl-19DAB

**CARMEN TORRES, VILLA ELISA CORP.,**
d/b/a Chito Restaurant, a/k/a Chito's
Restaurant,

    **Defendants.**

_____

# ORDER

This case comes before the Court on the following:

1. Motion of Defendants Carmen Torres and Villa Elisa Corp. to Dismiss and Combined Memorandum of Law in Support Thereof (Doc. No. 9, filed Apr. 26, 2009); and

2. Memorandum of Law of Plaintiff J & J Sports Productions, Inc. in Opposition to Defendants' Motion to Dismiss (Doc. No. 12, filed May 6, 2009).

## Background

Plaintiff J&J Sports Productions, Inc. ("J&J") brought this action against Defendants Carmen Torres and the corporation she directs, Villa Elisa Corp. ("Villa"), under the Cable Communications Policy Act ("CCPA"), 47 U.S.C. §§ 553, 605 (2006). (Doc. No. 1, filed Feb. 27, 2009.) The CCPA provides owners of intellectual property with a cause of action against persons and entities who, without authorization, "intercept or receive or assist in intercepting or receiving any communications service offered over a cable system," *id.* § 553(a)(1), (c)(1), colloquially known as "stealing cable."[1]

---

[1] The Act also applies to the unauthorized reception of satellite television. *Id.* § 605(a).
(continued...)

According to the Complaint, J&J owns the exclusive rights to sell, market, and promote a boxing match known as the "Cotto/Margarito program." (Doc. No. 1 ¶ 9.) J&J encrypted the program and offered it for sale to residential and commercial cable and satellite subscribers. (*Id.* ¶¶ 12-13.) The program was displayed at Chito's Restaurant, a business operated by Villa, which in turn is directed by Torres. (*Id.* ¶¶ 6-8, 18-21.)

Defendants have moved to dismiss the Complaint. Their primary argument is that Torres cannot be liable under the CCPA based on the facts currently alleged. (Doc. No. 9 at 1-2.) The pertinent allegation dealing with Torres' individual actions states that:

> With full knowledge that the Program was not to be received and exhibited by entities unauthorized to do so, Defendants, **CARMEN TORRES, Individually, and as officer, director and/or principal of VILLA ELISA Corp. d/b/a CHITO RESTAURANT a/k/a CHITO'S RESTAURANT, and VILLA ELISA CORP. d/b/a CHITO RESTAURANT a/k/a CHITO'S RESTAURANT,** and/or their agents, servants, workmen or employees unlawfully intercepted, received and/or de-scrambled said satellite signal and did exhibit the programs at their commercial establishment located at 5649 E. Colonial Drive, Orlando, FL 32807, at the time of its transmission willfully [sic] and for purposes of direct or indirect commercial advantage or private financial gain.

(Doc. No. 1 ¶ 21 (emphasis, capitalization, and punctuation as in original).) The Complaint also alleges that Torres "had the ability and/or right to supervise activities such as the display of the Cotto/Margarito program" and she "had a direct financial interest" in the display of this program. (*Id.* ¶¶ 18-19.) According to Defendants, an individual can be held liable under the CCPA only to the extent the individual actually participated in the illegal activity, and the allegation in paragraph 9 is ambiguous as to Torres' personal involvement. Therefore it is argued that the Complaint should be dismissed. (Doc. No. 9 at 2.) Defendants also contend that Villa accidently purchased a

---

¹(...continued)

residential access to the program and that the display of the program through this method was a mere error. (*Id.*)

J&J responds that an individual may be held vicariously liable under the CCPA, that the Complaint sufficiently alleges that Torres was involved in de-scrambling and displaying the Cotto/Margarito program, and that the Complaint adequately alleges willfulness and otherwise meets the requirements of the Federal Rules of Civil Procedure. (Doc. No. 12 at 1-13.)

**Standard of Review**

When ruling on a motion to dismiss for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6), a court must limit its consideration to the complaint, the written instruments attached to it as exhibits, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, ___, 127 S. Ct. 2499, 2509 (2007) (citation omitted); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). In determining the merits the motion, a court must "accept all factual allegations in the complaint as true." *Tellabs, Inc.*, 127 S. Ct. at 2509 (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Once a court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," the court must next determine whether the well-pled facts "'state a claim to relief that is plausible on its face.'" *Id.* at 1949-50 (quoting *Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citation omitted). As the United States Supreme Court explained:

> The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* at 1949 (quotation marks and internal citations omitted) (quoting *Twombly*, 550 U.S. at 557). On a Rule 12(b)(6) motion to dismiss, when a court considers the range of possible interpretations of the defendant's alleged conduct, if the "more likely explanations" involve lawful, non-actionable behavior, the court should find that the plaintiff's claim is not plausible. *Id.* at 1950-51.

**Analysis**

**I.      Individual Liability**

Defendants argue that an owner of a business which violates the CCPA cannot be held vicariously liable for the actions of her employees "without piercing the corporate veil." (Doc. No. 9 at 2.) In support, they cite *Time Warner Entm't v. Worldwide Elecs., L.C.*, 50 F. Supp. 2d 1288, 1300 n.13 (S.D. Fla. 1999). In that case, the court found that an individual could be liable for a business' CCPA violation without direct participation in the conduct under two theories: (1) traditional civil conspiracy; and (2) "aiding and abetting," due to the CCPA's duel status as a criminal statute. *Id.*[2] Further, courts have held that an owner can be liable for a corporation's CCPA

---

[2] Nevertheless, the court noted that the record contained sufficient evidence of personal
(continued...)

violation when the there is "no distinction" between the owner's actions and those of the corporation. *Comcast of Ill. X v. Multi-Vision Elecs., Inc.*, 491 F.3d 938, 947 (8th Cir. 2007). Finally, at least one case has held that an owner of a business that violates the CCPA may be held liable under a form of vicarious liability traditionally used for claims of copyright infringement. *Kingvision Pay-Per-View Ltd. v. Villalobos*, 554 F. Supp. 2d 375, 381 (E.D.N.Y. 2008). Liability under this theory may be established by demonstrating that the individual had the right to supervise the infringing parties and received a financial benefit from the infringement; the plaintiff need not demonstrate direct knowledge of the infringing activity or that the infringer was necessarily acting within the scope of employment. *See id.*; *see also Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 308 (2d Cir. 1963) (noting that the test has been applied in broader circumstances that traditional agency principles would permit). The CCPA itself is silent on the issue of vicarious liability.

It appears that J&J has attempted to establish liability under two of the above-described theories: direct participation and vicarious liability under the Copyright Act.[3] However, the Complaint does not sufficiently allege either theory. To begin, the Complaint does not allege the facts necessary to support a claim for direct liability. One possible reading of paragraph 21 is that Torres either individually intercepted and de-scrambled the program or directed her employees to do so. However, due to three uses of "and/or" in one sentence, among several other ambiguities, that

---

[2](...continued)
involvement because the individual defendants had personally sold decoders. *Id.*

[3] J&J also argues in its Response that Torres can be personally liable "based upon the grounds that her actions of exhibiting the Program in her commercial establishment were intentional and willful." (Doc. No. 12 at 7.) However, this argument presupposes that Torres "exhibit[ed]" the program rather than someone else at her store.

is only one of several possibilities. *See Iqbal*, 129 S. Ct. at 1950-51 (on a Rule 12(b)(6) motion to dismiss, when a court considers the range of possible interpretations of the defendant's alleged conduct, if the "more likely explanations" involve lawful, non-actionable behavior, the court should find that the plaintiff's claim is not plausible); *United States v. Bush*, 70 F.3d 557, 562 (10th Cir. 1995) (explaining that the use of "and/or" is strongly disfavored because it creates unnecessary ambiguity). For instance, based on the language J&J uses, it is possible that a "workman" in the restaurant intercepted and de-scrambled the program on his own accord and without Torres' knowledge. Plaintiffs in federal court are permitted to plead in the alternative, Fed. R. Civ. P. 8(d)(2) (permitting alternative pleading), but they are not permitted to plead "in the ambiguous". *Id.* § 8(d)(1) ("Each allegation must be simple, concise, and direct."). If J&J wishes to plead in the alternative that Torres is directly liable for a CCPA violation because she was the person who actually intercepted and descrambled the program or directed someone to do so, it must state so clearly and succinctly. *Id.* § 8(a)(2), (d)(1).

In addition, the Complaint appears to allege a theory of liability based on Torres' right to supervise her employees and her receipt of a financial benefit. (Doc. No. 1 ¶¶ 18-19.) Even if J&J is correct that this test applies to the CCPA, the Complaint does not allege a sufficient factual basis to conclude that Torres had a sufficiently "direct" financial interest from the exploitation of the Cotto/Margarito program. *See Softel, Inv. v. Dragon Med. & Sci. Commc'n*, 118 F.3d 955, 971-72 (2d Cir. 1997) (finding that the mere fact that an individual defendant was an officer and shareholder of a corporation did not establish a direct financial interest). The Complaint alleges in conclusory fashion that Torres had a "direct financial interest," but the Supreme Court's recent decision in *Iqbal*

instructs courts to ignore such "threadbare" recitals of a cause of action's elements. *Iqbal*, 129 S. Ct. at 1949.

Further, the Court is not convinced that the test for vicarious liability under the Copyright Act should be extended to the CCPA on these facts. Critically, J&J does not address the important distinction that the Copyright Act and the CCPA are different statutes. There is no indication in J&J's Response that the two Acts share a common legislative history[4] or that the policy behind the vicarious liability rule should apply to a restaurant operator whose employees, under one construction of the facts, may have displayed a de-scrambled program without the operator's knowledge. *See, e.g.*, *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930-31 (2005); *So. Bell Tel. & Tel. Co. v. Assoc. Tel. Directory Publishers*, 756 F.2d 801, 811 (11th Cir. 1985). Although arguments may exist in favor of extending this vicarious liability rule to the CCPA, J&J does not articulate any in its Response.[5] If J&J reasserts claims against Torres under this theory in an Amended Complaint, it should be prepared in the future to adequately explain the basis of this theory of liability.

For the reasons stated above, the Complaint does not state a claim against Torres.

## II. Purchasing Error

Defendants make the following statement in their Motion to Dismiss:

In addition, plaintiff's pleadings omit a key detail as to defendant VILLA ELISA with regard to the fact that it had a residential cable access to the Cotto/Margarito program. Defendant VILLA ELISA's display of the fight by residential license was

---

[4] The original version of the Copyright Act was enacted in 1790. *See* H.R. Rep. No. 94-1476, at 1 (1976).

[5] The court's opinion in *Villalobos*, 554 F. Supp. 2d at 381, does not explain its rationale for applying the Copyright Act's test to the CCPA. The Court is unaware of any other case that has reached the same conclusion with respect to the CCPA.

> a mere error in program purchasing which directly contradicts the required element
> of willfulness.

(Doc. No. 9 at 2 (formatting altered for clarity).) Defendants do not argue that the Complaint, as currently pled, fails to sufficiently allege willfulness. Rather, they argue that additional facts beyond what is pled in the Complaint show a lack of willfulness. As explained above, the Court is limited to the four corners of the Complaint and any documents attached to the Complaint when analyzing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Tellabs, Inc.*, 127 S. Ct. at 2509. Thus, Defendants' assertion that they made a mistake which negates the CCPA's willfulness requirement is outside the scope of this Court's review.[6] *Id.*

## Conclusion

The Motion of Defendants Carmen Torres and Villa Elisa Corp. to Dismiss and Combined Memorandum of Law in Support Thereof (Doc. No. 9, filed Apr. 26, 2009) is **GRANTED in part and DENIED in part**. The Motion is **GRANTED** with respect to Plaintiff's claims against Torres, and it is **DENIED** in all other respects. Plaintiff may file an Amended Complaint within eleven days that complies with this Order by stating a legally sufficient and adequately pled basis for individual liability as to Defendant Torres. If Plaintiff does not file an Amended Complaint, the case will proceed on the Complaint currently before the Court except as stated in this Order.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on June 21, 2009.

---

[6] Further, because the assertion is made in a Motion, and not presented in evidentiary form, the Court cannot convert the Motion into one for summary judgment. *See* Fed. R. Civ. P. 12(d).

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record